```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

E.N.E. AEGIALI I,

                    Plaintiff,
                                              09 Civ. 4570 (RWS)
        - against -
                                              OPINION
GUANGZHOU CSSC-OCEANLINE-GWS
MARINE ENGINEERING CO. LTD. a/k/a
GUANGZHOU DOCKYARDS,

                    Defendant.

-------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/19/10

A P P E A R A N C E S:

   Attorney for Plaintiff

      BLANK ROME LLP
      The Chrysler Building
      405 Lexington Avenue
      New York, NY  10174
      By:  Jeremy J.O. Harwood, Esq.


   Attorneys for Defendant

      LENNON, MURPHY & LENNON, LLC
      The GrayBar Building
      420 Lexington Avenue, Suite 300
      New York, NY  10170
      By:  Patrick F. Lennon, Esq.
           Nancy R. Siegel, Esq.
           Anne C. LeVasseur, Esq.

**Sweet, D.J.**

Defendant Guangzhou CSSC-Oceanline-GWS Marine Engineering Co. Ltd. a/k/a Guangzhou Dockyards ("Defendant" or "Guangzhou") has moved to vacate the attachment obtained by Plaintiff E.N.E. Aegiali I ("Plaintiff" or "Aegiali") and to dismiss Plaintiff's complaint. Based on the facts and conclusions set forth below, the motion is granted, the attachment vacated, the funds released and the complaint dismissed.

**Prior Proceedings**

On May 14, 2009, Plaintiff filed its complaint in accordance with the ex parte maritime attachment and garnishment procedures provided by Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure. Through its complaint, Plaintiff sought, inter alia, to attach and garnish any of Defendant's property in this district up to and including $92,300,000.00. The underlying dispute between Plaintiff and Defendant relates to a contract for repairs to and conversion of a motor vessel belonging to Plaintiff at Defendant's yards in

1

China, which Defendant allegedly breached by failing and refusing to accommodate the vessel.

An Order of Attachment was issued on May 19, 2009, authorizing the attachment and garnishment of property in this district belonging to Defendant, up to the requested amount of $92,300,000.00.  Pursuant to the Order of Attachment, approximately $144,689.00 was attached while being routed as an electronic fund transfer ("EFT") through the New York branches of Bank of America ($134,689.00) and Citibank (approximately $10,000.00).

On May 29, 2009, Defendant made a restricted appearance pursuant to Rule B, filed an Answer and Counterclaim, and sought countersecurity from Plaintiff in the sum of $7,857,809.35.  On November 5, 2009, Plaintiff was ordered to post countersecurity in the sum of $144,689.00 and, on December 3, 2009, Plaintiff deposited a check with the Clerk of the Court for deposit in the Court's Registry to serve as Plaintiff's countersecurity.

The instant motion was heard and marked fully submitted on March 17, 2010.

***Jaldhi* Requires Vacatur**

In The Shipping Corporation of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 71 (2d Cir. 2009), the Second Circuit held that EFTs being processed by an intermediary bank in New York are not subject to Rule B attachment.  The Second Circuit has clearly stated that Jaldhi is to have retroactive effect, and the Court is not at liberty to depart from that holding.  See Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 91 (2d Cir. 2009) ("[T]he rule announced in [Jaldhi] has retroactive effect to all cases open on direct review . . . ."); Calais Shipholding Co. v. Bronwen Energy Trading Ltd., No. 07 Civ. 10609 (PKL), 2009 WL 4277246, at *4 (S.D.N.Y. Nov. 24, 2009) ("This Court is bound by the Second Circuit's determination that EFTs are not attachable property under Rule B and that this change in the law applies retroactively.").

There is no dispute that the funds attached pursuant to the Order of Attachment are EFTs.  Nonetheless, Plaintiff argues that the jurisdictional ruling of Jahldi is inapplicable here because Defendant filed a counterclaim and obtained countersecurity from this Court.  However,

3

neither Defendant's counterclaim nor Plaintiff's countersecurity cures the underlying jurisdictional defect. See Western Bulk PTE Ltd. v. Inspat Industries Ltd., No. 08 Civ. 9776, 2009 WL 4039435, at *1 (S.D.N.Y. Nov. 23, 2009) (holding that Defendant's filing of a counterclaim in a Rule B action "does not destroy the essentially quasi in rem nature of the action or amount to consent to complete jurisdiction under general waiver principles" (internal citation and quotation omitted)); Global Maritime Investments v. Companhia Siderurgica Nacional, No. 08 Civ. 11199, 2009 WL 4730196, at *2 (S.D.N.Y. Dec. 9, 2009) (Defendant's request for countersecurity does not cure the underlying jurisdictional defect).

Furthermore, Defendant filed its counterclaim and moved for countersecurity on May 29, 2009, well before the Second Circuit decided Jaldhi. At the time, Defendant could not have argued that the Court lacked personal jurisdiction, as Plaintiff had attached the EFTs under the pre-Jaldhi law of the Second Circuit. As the Second Circuit held in Hawknet, "a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could have first been made." 590 F.3d at 92 (quoting Holzsager v. Valley Hosp., 646 F.2d

4

792, 796 (2d Cir. 1981)); see also K/S Maria J. v. Augusta Due SRL, No. 09 Civ. 952, 2009 WL 4885151, at *1 (S.D.N.Y. Dec. 10, 2009) ("A defendant who attempted to cooperate should not now be penalized for not having, in the description of the court of appeals, 'clairvoyance.'" (quoting Hawknet, 590 F.3d at 92)).

A defendant's participation in litigation, prior to Jaldhi, does not constitute consent to personal jurisdiction. See, e.g., Silver Knot Shipping Ltd. v. Euro Trust Trading, No. 08 Civ. 10158, 2010 WL 286620, at *1 (S.D.N.Y. Jan. 15, 2010) (rejecting the argument "that defendant's actions during earlier stages of this Rule B litigation . . . constituted an acknowledgement by defendant that the funds were attachable property, making them subject to Rule B notwithstanding Jaldhi" as "wholly unpersuasive" in light of Hawknet and other post-Jaldhi rulings); HC Trading Int'l Inc. v. Crossbow Cement, SA, No. 08 Civ. 11237, 2009 WL 4337628, at *1 (S.D.N.Y. Dec. 2, 2009) ("No alchemy by the parties transformed EFTs that do not provide personal jurisdiction over the defendant under Rule B into a basis for this Court's jurisdiction over the defendant."); Gloria E.N.E. v. Korea Line Corp., No. 08 Civ. 2490 (JGK), 2009 WL 4016615, at *1 (S.D.N.Y. Nov. 16,

2009) ("No alchemy by the bank transformed EFTs that cannot be attached into property of the defendant that can be attached.").[1]

This is particularly true where, as here, Defendant preserved its right to object to the Court's jurisdiction by including the affirmative defenses of lack of personal jurisdiction and lack of quasi in rem jurisdiction in its Answer. See Companhia Siderurgica, 2009 WL 4730196, at *2 (rejecting the argument that Defendant's countersecurity request created jurisdiction because, inter alia, Defendant "expressly reserved its right to assert defenses to both the claims brought in the Complaint and the Rule B Orders").

Since Plaintiff has failed to demonstrate cause for the continued attachment of the EFTs, Defendant's motion to vacate the attachment is granted, the attachment vacated, and the funds released.

---

[1]   That Defendant registered to do business in New York on May 15, 2009, after Plaintiff had filed the complaint, does not impact the jurisdictional analysis. See Marimed Shipping, Inc. v. Persian Gulf Shipping Co., 567 F. Supp. 2d 524, 527 (S.D.N.Y. 2008) ("[T]he question of presence is determined as of the date the complaint is filed.").

6

Case 1:09-cv-04570-RWS   Document 31   Filed 05/19/10   Page 8 of 9

## The Complaint Is Dismissed for Lack of Jurisdiction

In Jaldhi, the Second Circuit described the jurisdictional limits in Rule B attachment proceedings as follows:

> In Rule B attachment proceedings, jurisdiction is predicated on the presence within the court's territorial reach of property in which the Rule B defendant has an interest. Because of the requirement that the defendant not be "found" within the district where the action is brought, Rule B contemplates that a court will lack in personam jurisdiction over the defendant when it orders that a writ of attachment be issued. In such a proceeding, the court's coercive authority is coterminous with the scope of its jurisdiction, and limited to the extent of the defendant's interest in the attached property; that authority does not extend to the exercise of in personam jurisdiction over a Rule B defendant.

585 F.3d at 69 n.12 (citations omitted). Thus, under Jaldhi and Hawknet, once the funds representing the attached EFTs are released, "for the District Court properly to maintain personal jurisdiction in this case, the Court would have to conclude that it can exercise personal jurisdiction by some other means." Hawknet, 590 F.3d at 92. As there is no quasi in rem or in personam jurisdiction over Defendant once the attached funds are

7

released, this action is dismissed and the garnishee banks are directed to release the funds to Defendant.

Because the action is dismissed, the countersecurity posted by Plaintiff will also be released.

**Conclusion**

Upon the facts and conclusions set forth above, the motion of Guangzhou is granted, the attachment is vacated, the garnishee banks are directed to release the funds, and the Clerk is directed to release the countersecurity funds from the Court's Registry. The action is dismissed.

It is so ordered.

**New York, N.Y.**
**May** 18, 2010

ROBERT W. SWEET
U.S.D.J.

8